IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOELENE RYAN,

                Plaintiff,

    v.

NEW JERSEY STATE BOARD OF
NURSING, GEORGE HEBERT, AND
DR. LEO SELM

             Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 15-1250 (JBS/JS)

**OPINION**

APPEARANCES:

Ms. Joelene Ryan
P.O. Box 155
Franklinville, NJ 08322
    Plaintiff, pro se

Gregory J. Sullivan, Deputy Attorney General
New Jersey Attorney General's Office
25 Market Street
P.O. Box 116
R.J. Hughes Justice Complex
Trenton, NJ 08625
    Attorney for Defendants New Jersey State Board of Nursing
    and George Hebert

John B. Mullahy, Esq.
Kaufman Borgeest & Ryan LLP
9 Campus Drive
Parsippany, NJ 07054
    Attorney for Defendant Dr. Leo Selm

**SIMANDLE, Chief Judge:**

I.   **INTRODUCTION**

In this action, Plaintiff Joelene Ryan, a nurse, asserts claims for denial of due process against the New Jersey State Board of Nursing and Dr. Leo Selm in connection with an investigation by the Board in 2011 and 2012 that culminated in the suspension of Plaintiff's nursing license in 2013. Plaintiff in essence claims that the Board mishandled its investigation by failing to collect complete hospital records, refusing to allow her to present evidence in her own defense, and misleading Plaintiff during questioning at the hearing. Plaintiff also asserts that Dr. Selm, a psychologist appointed by the Board to perform a psychological evaluation of Plaintiff in connection with its investigation, committed malpractice by using inappropriate tests and refusing to acknowledge or correct his mistake. This case comes before the Court on Defendant Selm's motion to dismiss [Docket Item 13], Plaintiff's motion for Default Judgment against the New Jersey State Board of Nursing [Docket Item 16], and the Board's motion to vacate default [Docket Item 20]. For the following reasons, the Court will grant Defendant Selm's motion to dismiss and the Board's motion to vacate default and deny Plaintiff's motion for default judgment as moot.

2

## II.  BACKGROUND

The Court accepts as true for the purposes of the instant motions the following facts as alleged in the Amended Complaint. [Docket Item 3.]

Plaintiff Joelene Ryan was a Registered Nurse in the Intensive Care Unit at Memorial Hospital of Salem County ("the Hospital"). (Am. Compl. at 2.) Plaintiff alleges that after she began raising "safety, compliance, medication administration protocols and policy concerns" with her superiors, she received unwarranted Hospital Discipline notices on August 20, 2010 and December 8, 2010 which did not identify the offending incidents. (Id. at 2-3.) In response, Plaintiff wrote a letter to the Chief Nursing Officer objecting to the discipline notices which had been received without any specific allegations of misconduct. (Id. at 3.) Plaintiff alleges that she "experienced retaliation within three days after speaking out" and was terminated from her position at the Hospital on or about December 14, 2010. (Id.)

Separately, the New Jersey State Board of Nursing ("the Board") began an investigation into the nature of Plaintiff's termination on or about April 21, 2011. (Id. at 4.) In response to a request for more information, the Hospital produced "numerous pages of allegations" to the Board about the circumstances surrounding Plaintiff's termination. (Id.) This

3

material, including copies of official Hospital records, was allegedly kept from Plaintiff for years until she received the records through Open Public Records Act requests in 2012 and 2013. (Id. at 5.) Plaintiff alleges that the documentation provided to the Board by the Hospital had "obviously been tampered with" and that the Board was negligent in failing to acquire "Plaintiff's nursing notes, Plaintiff's nursing assessment flow sheets, physician order pages on the Plaintiff's patients, alleged incident reports and other documentary evidence" from the Hospital to complete its investigatory file on her. (Id.) Plaintiff alleges that the Board was required to obtain these documents in order to "perfect" the complaint against her. (Id.)

After the Board received these written allegations from the Hospital, the Board issued a letter to Plaintiff titled "Complaint" on or about August 18, 2011. (Id. at 6.) Plaintiff answered the Board's complaint in writing on or about September 15, 2011, but Plaintiff alleges that the Board never read her response because it was "too long." (Id.)

Plaintiff was subpoenaed to testify before the Board in response to the complaint on or about December 14, 2011. (Id.) Plaintiff objected to testifying and submitted supplemental written communications to the Board instead, but ultimately appeared to testify before the Board in Newark, New Jersey on or

4

about January 11, 2012. (Id. at 6-7.) Plaintiff alleges a litany
of due process violations at this hearing, including "cynical
and hostile" questioning of Plaintiff and denying her the
opportunity to present her own evidence or address the
credibility of the Hospital. (Id. at 7.) Plaintiff alleges that
she was questioned by the Board about two incidents that
occurred during her employment at the Hospital at this hearing,
but that she gave "erroneous testimony" because the Board never
identified "the patient or the date" in question. (Id.)

    Thereafter the Board issued a Provisional Order on or about
April 4, 2012, directing Plaintiff to undergo a psychological
evaluation. (Id. at 8.) This order "did not state any Findings
of Fact to substantiate such an order." (Id.) When Plaintiff
inquired as to why she was required to undergo an evaluation,
Plaintiff was allegedly told it was "because of [her] written
answer and because [she was] flustered at testimony." (Id. at
9.) Plaintiff contends that "The Board made assumptions about
the Plaintiff's mental health, without any reasonably expected
inquiry into Plaintiff's demeanor at testimony: a failure of due
care and due diligence." (Id.) Plaintiff was encouraged, but
"never required," to enter the Recovery and Monitoring Program
("RAMP") run by the New Jersey State Nurses Association. (Id.)

    The Board issued the Plaintiff a Final Order of Discipline
on or about June 18, 2012 and a Corrected Final Order on or

about July 24, 2012. (Id. at 10-11.) The Board's Orders found that Plaintiff had a "disordered thought process" because of her "demeanor at testimony" and her "written answers." (Id. at 11.) The Orders placed restrictions on Plaintiff's work as a nurse and ordered that she undergo a psychological evaluation with RAMP or another Board approved evaluator. (Id.; see also Def. Mot. Ex. A & B.)[1] Plaintiff alleges that these Orders were not removed from the public record although she urged this many times. (Id. at 13.)

Plaintiff alleges that Board initially would not disclose the names of its approved evaluators to her, so she began seeing a private psychologist in or around June 18, 2012. (Id. at 12.) Plaintiff alleges that her attorney at the time never notified the Board that she was seeking counseling, and that she later discovered that he had a conflict of interest in representation. (Id.)

Dr. Selm, a Board approved evaluator, performed a psychological evaluation of Plaintiff in July 2012. (Id. at 11, 14; see also Def. Mot. Ex. D.) The Board provided Dr. Selm with

---

[1] While the Court generally only considers matters within the four corners of the Plaintiff's complaint on a motion to dismiss, the Court may consider a "document integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

its Provisional Order, transcripts of Plaintiff's testimony, copies of her written submissions, and records from the Hospital in advance of his evaluation. (Def. Mot. Ex. E.) Plaintiff signed an informed consent form prior to her meetings with Dr. Selm. (Def. Mot. Ex. C.)

Dr. Selm diagnosed Plaintiff with three personality disorders, allegedly in error. (Am. Compl. at 14-15; see also Def Mot. Ex. D.) Dr. Selm used the MCMI III test, which Plaintiff alleges was inappropriate for her condition, not reliable for legal proceedings, and leads often to misdiagnoses. (Am. Compl. at 14.) Plaintiff alleges that her "MCMI scores are not congruent with Dr. Selm's diagnostic impression," that Dr. Selm employed "gas lighting techniques when questioning the Plaintiff," and that his narrative report misstated that she had been "disciplined or suspended" at her first nursing job. (Id. at 15.) Plaintiff further alleges that Dr. Selm committed gross negligence and malpractice by not referencing the DSM-IV in his evaluation. (Id.)

On or about February 15, 2013, the Board issued its Final Order of Discipline regarding Plaintiff. (Def. Mot. Ex. F.) The Board suspended Plaintiff's nursing license for a "minimum period of one year" and ordered that she undergo therapy on a regular basis and that her counselor submit quarterly progress reports to the Board. (Id. at 5.)

7

Plaintiff has filed two appeals in the Superior Court of New Jersey, Appellate Division on July 2, 2012 and December 16, 2013 contesting both disciplinary orders from the Board. (Am. Compl. at 17.) She has apparently attempted numerous times to confront Dr. Selm regarding the "many serious errors in his narrative report" but her attempts to have him correct his testimony have been unsuccessful. (Id. at 16-17.) She has also allegedly corresponded in writing with Governor Christie regarding the Board's alleged efforts to force her into RAMP. (Id. at 10.) Plaintiff has contacted Consumer Affairs about the program but they have "refused to investigate any of this matter" because "the Board is fair." (Id.)

Plaintiff filed this action on February 13, 2015 [Docket Item 1] and filed an Amended Complaint on March 16, 2015 [Docket Item 3], alleging violations of due process guaranteed by the Fifth Amendment of the United States Constitution and the New Jersey Constitution, New Jersey statutes, the New Jersey Administrative Code, the New Jersey Administrative Procedures Act, and HIPAA, and claims for slander, libel, gross negligence, and malpractice. [Docket Item 5.] Plaintiff requested an extension of time to serve the Complaint on Defendants, and Defendants did not receive their summonses until September 29 and 30, 2015. [Docket Item 12.] Defendant Selm timely filed the instant motion to dismiss [Docket Item 13] which Plaintiff

opposed. [Docket Item 21.] After the Board failed to respond or otherwise defend against the Amended Complaint, Plaintiff sought and was granted an entry of default. [Docket Items 14 & 15.] Plaintiff then sought a Default Judgment against the Board in the amount of $35 million. [Docket Item 16.] Two days later, the Board moved to vacate the default and sought an extension of time to answer, move, or otherwise respond to the Amended Complaint. [Docket Item 20.] The Court will decide these motions without holding oral argument pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

### 1. Rules 12(b)(2) and 12(b)(5)

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied." Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987). Under Rule 12(b)(5), Fed. R. Civ. P., a party may file a motion asserting insufficient process as a defense. "When a party moves to dismiss under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity." Laffey v. Plousis, Case No. 05-2796, 2008 WL 305289, at *3 (D.N.J. Feb. 1, 2008), aff'd, 364 Fed. Appx. 791 (3d Cir. 2010).

### 2. Rule 12(b)(6)

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing

9

that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

**3. Rule 55**

10

Pursuant to Rule 55(c), Fed. R. Civ. P., "[t]he court may set aside an entry of default for good cause . . . ." While judgments based on default are disfavored, the decision of whether to set aside an entry of default under Rule 55(c) is left to the discretion of the district court. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984). "[D]oubtful cases [are] to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" Id. (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). Courts consider three factors: "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." Dambach v. United States, 211 Fed. Appx. 105, 109 (3d Cir. 2006) (citing $55,518.05 in U.S. Currency, 728 F.2d at 194).

**IV.  DISCUSSION**

**1. Defendant Selm's Motion to Dismiss**

Defendant Selm seeks to dismiss Plaintiff's malpractice claims against him on the grounds that this Court lacks personal jurisdiction over him, and that he is immune from suit because he enjoys quasi-judicial immunity and his testimony is protected

11

by the litigation privilege.[2] For the following reasons, the
Court will grant Defendant Selm's motion and dismiss Plaintiff's
claims against him.

## A. Service of the complaint

First, Defendant Selm seeks to dismiss the Amended
Complaint with prejudice because he was never properly served
with the complaint.[3] Defendant contends that Plaintiff's service
of the Amended Complaint upon the law firm Kaufman Borgeest &
Ryan LLP, which had represented Dr. Selm in his previous
dealings with Plaintiff in 2013, was improper. Plaintiff, in
response, argues in essence that Defendant has waived this
argument because "the firm did not refuse service of the
complaint" or "notify Plaintiff that the firm no longer
represented Dr. Selm" or "notify Plaintiff that the complaint
was inappropriately served to the law firm." (Pl. Opp. at 12.)

---

[2] Defendant Selm also raised a statute of limitations defense in
his motion, which he later withdrew. Plaintiff's original
complaint was filed within the two-year statute of limitations
on medical malpractice actions. (Def. Reply at 2.)
[3] Defendant styles his motion to dismiss as one under Fed. R.
Civ. P. 12(b)(1), on the grounds that this Court lacks personal
jurisdiction over him because he was never properly served with
the complaint. This is an improper characterization of
Defendant's argument: Rule 12(b)(1) addresses a lack of subject
matter jurisdiction, which this Court plainly has, while a
dismissal for insufficient service of process is rather made
under Rule 12(b)(2) (pertaining to lack of personal
jurisdiction) and Rule 12(b)(5) (insufficient service of
process).

Fed. R. Civ. P. 4(e) governs methods of service and provides that service upon an individual must be made by either (1) following state law for serving a summons in the state where the district court is located, or (2) by one of the following: (A) delivering a copy of the summons and complaint to the individual personally, (B) leaving a copy of the summons and complaint at the individual's dwelling with someone of suitable age and discretion, or (C) delivering a copy of the summons and company to an "agent authorized by appointment or by law to receive service of process."[4] The third method -- serving process on the defendant's agent -- will only be valid where there has been an "actual appointment for the specific purpose of receiving process." Nyholm v. Pryce, 259 F.R.D. 101, 104 (D.N.J. 2009). To determine whether an actual appointment exists,

> courts will generally look to the circumstances of the agency relationship, and although authority to accept process need not be explicit, it must be either express or implied from the type of relationship between the Defendants and the alleged agent. Additionally, there must be some evidence that Defendants intended to confer such authority upon the agent. The requisite intent may be implied from . . . the circumstances surrounding the service upon the agent.

Id. (quoting Local 617, Int'l Brotherhood of Teamsters v. Hudson Bergen Trucking Co., 440 A.2d 18, 20 (N.J. App. Div. 1981)

---

[4] New Jersey state law provides that service of process on an individual must be made by these three same methods. N.J. Ct. R. 4:4-1(a)(1).

(citing 4 Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1097, 1101)). It is the plaintiff's
burden to prove that "an agency relationship existed between the
Defendants and the individual who accepted service." Id. While
good faith reliance on the apparent authority of an individual
to accept service may satisfy the requirements of Rule
4(e)(2)(c), "there must be evidence that the defendant himself
intended to confer such authority on the agent." Laffey v.
Plousis, Case No. 05-2796, 2008 WL 305289, at *4 (D.N.J. Feb. 1,
2008), aff'd, 364 Fed. Appx. 791 (3d Cir. 2010).

In this case, there has been no showing that the law firm
Kaufman Borgeest & Ryan LLP was expressly "authorized by
appointment or by law" as Rule 4(e) contemplates. Plaintiff has
produced no evidence, other than the fact that the law firm did
not reject service of the summons, to show that Defendant Selm
had a continued agency relationship with the law firm and that
he intended that the law firm be authorized to accept process on
his behalf. Instead, Plaintiff conclusively states that "[i]t is
quite clear that Kaufman, Borgeest and Ryan represented Dr. Selm
in 2013 and intended to represent Dr. Selm in the future, with
regard to any liability that arose, from Dr. Selm's evaluation
of the Plaintiff." (Pl. Opp. at 12.) Plaintiff cannot satisfy
her burden in this manner. Accordingly, because Defendant Selm
was never properly served with the summons and Amended Complaint

14

in this action, this Court lacks personal jurisdiction over him and will dismiss Plaintiff's claims against him.

### B. Quasi-Judicial Immunity and Litigation Privilege

In the alternative, Defendant Selm argues that he is immune from suit for matters arising from his evaluation of Plaintiff for the Board because he was serving in a quasi-judicial function at the time and because the evaluation arose in the course of quasi-judicial proceedings.

The United States Supreme Court "has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process." Hughes v. Long, 242 F.3d 121, 125 (3d Cir. 2001). This immunity afforded to judges, prosecutors, and witnesses is intended to give "functionaries in the judicial system the ability to perform their tasks and apply their discretion without the threat of retaliatory" litigation. Id. The Supreme Court has extended quasi-judicial immunity to administrative proceedings where the adjudication "shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." Butz v. Economou, 438 U.S. 478, 512-13 (1978); Keystone Redevelopment Partners, LLC v. Decker, 631 F.3d 89, 95 (3d Cir. 2011) ("Quasi-judicial immunity attaches to public officials whose roles are 'functionally comparable' to that of a judge.").

15

The Third Circuit has endowed doctors like Defendant Selm with judicial immunity when they "function[] as integral parts of the judicial system." McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992). In McArdle, the Third Circuit granted judicial immunity to a physician who had performed a psychological evaluation at a judge's request and submitted a written report to the court, reasoning that the physician was "functioning as an arm of the court" and as such "was an integral part of the judicial process and . . . protected by the same absolute judicial immunity that protects" the judge. Id. at 1085. The Court of Appeals also considered the doctor's report and recommendation to the court "testimony protected by absolute witness immunity." Id.

The Court of Appeals similarly granted judicial immunity to a social worker and a psychologist conducting psychological evaluations of litigants at a court's request, finding that they, too "acted as arms of the court and performed functions integral to the judicial process" because they had been appointed "to gather information, conduct an evaluation, and make a recommendation to aid" the court in its determination of the case before it. Hughes, 242 F.3d at 127. The Court held that "[t]hese functions are intimately related and essential to the judicial process because they aid and inform the court in its discretionary duties." Id.

16

Defendant Selm, as a Board-appointed psychologist engaged in the course of the Board's adjudication of its Complaint against Plaintiff, is plainly immune from suit for his evaluation under these precedents. Moreover, even if Defendant Selm were not entitled to absolute immunity based on his quasi-judicial role, his report for the Board is protected by the litigation privilege because it was created in the course of "judicial or quasi-judicial proceedings." New Jersey's litigation privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or by other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Hawkins v. Harris, 661 A.2d 284, 289 (N.J. 1995). Like judicial immunity, the litigation privilege applies to statements made in administrative proceedings. Zagami, LLC v. Cottrell, 957 A.2d 691, 694 (N.J. App. Div. 2008). As a participant "authorized by law" to contribute to the Board's proceedings -- as a Board-approved evaluator -- whose evaluation was conducted and furnished solely to aid the Board in its adjudication of the Complaint against Plaintiff, Defendant Selm is clearly protected by the litigation privilege for the interviews, tests, and reports he produced in the process of offering an opinion as to Plaintiff's mental state and capacity to the Board.

Accordingly, because Defendant Selm cannot be sued for the evaluation he performed for the Board, Plaintiff's malpractice and negligence claims against him must be dismissed.

## 2. Default Judgment against the Board

Next, Plaintiff seeks entry of a Default Judgment in the amount of $35 million against the Board [Docket Item 16], following the Clerk of Court's entry of default. [Docket Items 14 & 15.] The Board seeks to vacate the default entered against it for good cause. [Docket Item 20.]

Pursuant to Rule 55(c), Fed. R. Civ. P., "[t]he court may set aside an entry of default for good cause . . . ." A district court must consider three factors on a motion to set aside a default under Rule 55(c): "(1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct." Dambach v. United States, 211 Fed. Appx. 105, 109 (3d Cir. 2006).  In this case, counsel for the Board contends that all three factors weigh in favor of setting aside the Clerk's entry of default, and the Court agrees.

Defense counsel, Mr. Sullivan, attests that this case was not assigned to him in the New Jersey Attorney General's office, Tort Litigation and Judiciary Section of the Law Division, until October 21, 2015, the day the Board's answer was due. (Sullivan Certification [Docket Item 20-1] at ¶¶ 4 & 5.) Upon receiving

18

the file, Mr. Sullivan certifies that he called Plaintiff seeking an extension of time to respond to her complaint, at which time she indicated that she needed a day to consider the request. (Id. ¶ 6.) Mr. Sullivan contends that Plaintiff never responded to this request, and that subsequent calls and email messages to her went unanswered. (Id. ¶ 8.) Instead of responding to him, he attests, Plaintiff went straight to the Court and sought entry of default against the Board on October 30, 2015. (Id. ¶ 10.) The Board's failure to timely answer is plainly not the result of "culpable action (such as willful or bad faith conduct or deliberate trial strategy)" Dambach, 211 Fed. Appx. at 110 (internal citations omitted), but instead a combination of a short administrative delay in the New Jersey Attorney General's office and Plaintiff's failure to respond to opposing counsel's request for a reasonable extension of time. This tips the 55(c) conduct factor in favor of setting aside default.

Additionally, Plaintiff will not be prejudiced by an order vacating the entry of default against the Board, despite her contentions otherwise. The default was entered shortly after Plaintiff's Amended Complaint was served on all defendants, and the Board moved to vacate the default only three days after default was entered. Plaintiff cannot claim prejudice against her rights in this brief delay in answering the Complaint: the

Third Circuit has previously held that "[d]elay in realizing satisfaction on a claim rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default [] entered at an early stage of the proceeding." Feliciano v. Reliant Tooling Co., 691 F.2d 653, 657 (3d Cir. 1982). There is, moreover, no indication that Plaintiff would risk the "loss of available evidence, increased potential for fraud or collusion, or substantial reliance upon the judgment to support a finding of prejudice." Id. In the absence of any showing of unfair prejudice, the Court concludes that this 55(c) factor also weighs in favor of granting the Board's motion.[5]

Finally, Mr. Sullivan certifies that the Board will present "sound and meritorious defenses" to the Amended Complaint (Sullivan Cert. ¶ 10). Plaintiff takes the position that this cannot be true because Mr. Sullivan did not identify those defenses in his motion, and because any possible defense raised against her claims can only be "based on a further lack of due diligence" and will be unmasked as meritless once fully examined. (Pl. Opp. at 6.) Nonetheless, the Board deserves the benefit of the doubt at this juncture; the Third Circuit has

---

[5] Plaintiff also raises in her opposition the fact that she was never served with a complete copy of the Board's motion. (Pl. Opp. at 5-6.) This mistake also cannot result in prejudice against Plaintiff; the Board rectified its mistake within days of Plaintiff's opposition [see Docket Item 23], and Plaintiff was plainly able to file a complete opposition to the motion.

instructed that "doubtful cases [are] to be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir. 1951)). Having found that two of three 55(c) factors weigh heavily in favor of setting aside default, and the third is unclear, the Court must decide this case on its merits. The Court will grant the Board's motion to set aside entry of default and permit the Board to "plead or otherwise defend" in this action, Fed. R. Civ. P. 55(a). Accordingly, the Court will deny Plaintiff's motion for default judgment as moot.

V.  **CONCLUSION**

An accompanying Order will be entered.


**June 28, 2016**                    **/s Jerome B. Simandle**
Date                                JEROME B. SIMANDLE
                                    Chief U.S. District Judge


21