```
              IN THE UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOELENE RYAN,<br><br>                Plaintiff,<br><br>    v.<br><br>NEW JERSEY STATE BOARD OF<br>NURSING, GEORGE HEBERT, AND<br>DR. LEO SELM<br><br>                Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>   Civil Action<br>No. 15-1250 (JBS/JS)<br><br><br>**OPINION** |

APPEARANCES:

Ms. Joelene Ryan
P.O. Box 155
Franklinville, NJ 08322
    Plaintiff, pro se

Gregory J. Sullivan, Deputy Attorney General
New Jersey Attorney General's Office
25 Market Street
P.O. Box 116
R.J. Hughes Justice Complex
Trenton, NJ 08625
    Attorney for Defendants New Jersey State Board of Nursing
    and George Hebert

**SIMANDLE, Chief Judge:**

**I.    INTRODUCTION**

In this action, Plaintiff Joelene Ryan, a nurse, asserts claims for denial of due process against the New Jersey State Board of Nursing and George Hebert, a one-time Director of the Board, in connection with an investigation by the Board in 2011

and 2012 that culminated in the suspension of Plaintiff's nursing license in 2013. Plaintiff in essence claims that the Board mishandled its investigation by failing to collect complete hospital records, refusing to allow her to present evidence in her own defense, and misleading Plaintiff during questioning at the hearing.

This case comes before the Court on motion to dismiss by the New Jersey State Board of Nursing and George Hebert [Docket Item 27] and Plaintiff's motion requesting that the Court accept her untimely Opposition Brief [Docket Item 31].[1] For the following reasons, the Court will grant both motions and will dismiss the Amended Complaint with prejudice.

## II.  BACKGROUND

The following recitation of the facts of this case are taken from this Court's June 28, 2016 Opinion and Order on a previous motion to dismiss. Ryan v. New Jersey State Bd. of Nursing, Case No. 15-1250, 2016 WL 3533997 (D.N.J. June 28, 2016). The Court accepts as true for the purposes of the instant

---

[1] The Court had previously granted Plaintiff a 30-day extension of time in which to file her Opposition Brief, making her brief due by August 25, 2016. [Docket Item 29.] Plaintiff's submission was not filed until September 28, 2016. Nonetheless, Defendants were not meaningfully prejudiced by Plaintiff's delay, and for good cause shown, the Court will grant Plaintiff's request and consider the arguments raised in her untimely Opposition Brief.

motions the following facts as alleged in the Amended Complaint. [Docket Item 3.]

Plaintiff Joelene Ryan was a Registered Nurse in the Intensive Care Unit at Memorial Hospital of Salem County ("the Hospital"). (Am. Compl. at 2.) Plaintiff alleges that after she began raising "safety, compliance, medication administration protocols and policy concerns" with her superiors, she received unwarranted Hospital Discipline notices on August 20, 2010 and December 8, 2010 which did not identify the offending incidents. (Id. at 2-3.) In response, Plaintiff wrote a letter to the Chief Nursing Officer objecting to the discipline notices which had been received without any specific allegations of misconduct. (Id. at 3.) Plaintiff alleges that she "experienced retaliation within three days after speaking out" and was terminated from her position at the Hospital on or about December 14, 2010. (Id.)

Separately, the New Jersey State Board of Nursing ("the Board") began an investigation into the nature of Plaintiff's termination on or about April 21, 2011. (Id. at 4.) In response to a request for more information, the Hospital produced "numerous pages of allegations" to the Board about the circumstances surrounding Plaintiff's termination. (Id.) This material, including copies of official Hospital records, was allegedly kept from Plaintiff until she received the records

3

through Open Public Records Act requests in 2012 and 2013. (Id. at 5.) Plaintiff alleges that the documentation provided to the Board by the Hospital had "obviously been tampered with" and that the Board was negligent in failing to acquire "Plaintiff's nursing notes, Plaintiff's nursing assessment flow sheets, physician order pages on the Plaintiff's patients, alleged incident reports and other documentary evidence" from the Hospital to complete its investigatory file on her. (Id.) Plaintiff alleges that the Board was required to obtain these documents in order to "perfect" the complaint against her. (Id.)

After the Board received these written allegations from the Hospital, the Board issued a letter to Plaintiff titled "Complaint" on or about August 18, 2011. (Id. at 6.) Plaintiff answered the Board's complaint in writing on or about September 15, 2011, but Plaintiff alleges that the Board never read her response because it was "too long." (Id.)

Plaintiff was subpoenaed to testify before the Board in response to the complaint on or about December 14, 2011. (Id.) Plaintiff objected to testifying and submitted supplemental written communications to the Board instead, but ultimately appeared to testify before the Board in Newark, New Jersey on or about January 11, 2012. (Id. at 6-7.) Plaintiff alleges a litany of due process violations at this hearing, including "cynical and hostile" questioning of Plaintiff and denying her the

4

opportunity to present her own evidence or address the credibility of the Hospital. (Id. at 7.) Plaintiff alleges that she was questioned by the Board about two incidents that occurred during her employment at the Hospital at this hearing, but that she gave "erroneous testimony" because the Board never identified "the patient or the date" in question. (Id.)

Thereafter the Board issued a Provisional Order on or about April 4, 2012, directing Plaintiff to undergo a psychological evaluation. (Id. at 8.) This order "did not state any Findings of Fact to substantiate such an order." (Id.) When Plaintiff inquired as to why she was required to undergo an evaluation, Plaintiff was allegedly told it was "because of [her] written answer and because [she was] flustered at testimony." (Id. at 9.) Plaintiff contends that "The Board made assumptions about the Plaintiff's mental health, without any reasonably expected inquiry into Plaintiff's demeanor at testimony: a failure of due care and due diligence." (Id.) Plaintiff was encouraged, but "never required," to enter the Recovery and Monitoring Program ("RAMP") run by the New Jersey State Nurses Association. (Id.)

The Board issued the Plaintiff a Final Order of Discipline on or about June 18, 2012 and a Corrected Final Order on or about July 24, 2012. (Id. at 10-11.) The Board's Orders found that Plaintiff had a "disordered thought process" because of her "demeanor at testimony" and her "written answers." (Id. at 11.)

5

The Orders placed restrictions on Plaintiff's work as a nurse and ordered that she undergo a psychological evaluation with RAMP or another Board approved evaluator. (Id.; see also Def. Mot. Ex. A & B.)[2] Plaintiff alleges that these Orders were not removed from the public record although she urged this many times. (Id. at 13.)

Plaintiff alleges that Board initially would not disclose the names of its approved evaluators to her, so she began seeing a private psychologist in or around June 18, 2012. (Id. at 12.) Plaintiff alleges that her attorney at the time never notified the Board that she was seeking counseling, and that she later discovered that he had a conflict of interest in representation. (Id.)

Dr. Selm, a Board approved evaluator, performed a psychological evaluation of Plaintiff in July 2012. (Id. at 11, 14; see also Def. Mot. Ex. D.) The Board provided Dr. Selm with its Provisional Order, transcripts of Plaintiff's testimony, copies of her written submissions, and records from the Hospital in advance of his evaluation. (Def. Mot. Ex. E.) Plaintiff

---

[2] While the Court generally only considers matters within the four corners of the Plaintiff's complaint on a motion to dismiss, the Court may consider a "document integral to or explicitly relied upon in the complaint" without converting the motion to dismiss into a motion for summary judgment. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

signed an informed consent form prior to her meetings with Dr. Selm. (Def. Mot. Ex. C.)

Dr. Selm diagnosed Plaintiff with three personality disorders, allegedly in error. (Am. Compl. at 14-15; see also Def Mot. Ex. D.) Dr. Selm used the MCMI III test, which Plaintiff alleges was inappropriate for her condition, not reliable for legal proceedings, and leads often to misdiagnoses. (Am. Compl. at 14.) Plaintiff alleges that her "MCMI scores are not congruent with Dr. Selm's diagnostic impression," that Dr. Selm employed "gas lighting techniques when questioning the Plaintiff," and that his narrative report misstated that she had been "disciplined or suspended" at her first nursing job. (Id. at 15.) Plaintiff further alleges that Dr. Selm committed gross negligence and malpractice by not referencing the DSM-IV in his evaluation. (Id.)

On or about February 15, 2013, the Board issued its Final Order of Discipline regarding Plaintiff. (Def. Mot. Ex. F.) The Board suspended Plaintiff's nursing license for a "minimum period of one year" and ordered that she undergo therapy on a regular basis and that her counselor submit quarterly progress reports to the Board. (Id. at 5.)

Plaintiff has filed two appeals in the Superior Court of New Jersey, Appellate Division on July 2, 2012 and December 16, 2013 contesting both disciplinary orders from the Board. (Am.

7

Compl. at 17.) She has apparently attempted numerous times to confront Dr. Selm regarding the "many serious errors in his narrative report" but her attempts to have him correct his testimony have been unsuccessful. (Id. at 16-17.) She has also allegedly corresponded in writing with Governor Christie regarding the Board's alleged efforts to force her into RAMP. (Id. at 10.) Plaintiff has contacted Consumer Affairs about the program but they have "refused to investigate any of this matter" because they say "the Board is fair." (Id.)

    Plaintiff filed this action on February 13, 2015 [Docket Item 1] and filed an Amended Complaint on March 16, 2015 [Docket Item 3], alleging violations of due process guaranteed by the Fifth Amendment of the United States Constitution and the New Jersey Constitution, New Jersey statutes, the New Jersey Administrative Code, the New Jersey Administrative Procedures Act, and HIPAA, and claims for slander, libel, gross negligence, and malpractice. [Docket Item 5.] Defendant Selm timely filed a motion to dismiss [Docket Item 13] for lack of personal jurisdiction and for quasi-judicial immunity, which the Court granted. [Docket Item 25.] In that same Opinion and Order, the Court also vacated the Clerk of Court's entry of default against the Board and ordered the Board to answer or otherwise respond to the Amended Complaint. The instant motion to dismiss [Docket

Item 27] followed. The Court will decide this motion without holding oral argument pursuant to Fed. R. Civ. P. 78.

### III. STANDARD OF REVIEW

#### 1. Rule 12(b)(1)

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) must be granted if the court lacks subject matter jurisdiction to hear a claim. In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012). When a defendant files a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing subject matter jurisdiction for the sake of remaining in federal court. Gould Elec., Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).

Defendants' motion presents a facial challenge to subject matter jurisdiction. A "facial attack" is "an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or . . . because some other jurisdictional defect is present." Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014). By contrast, a factual challenge makes an argument that the facts of the case do not support the asserted jurisdiction. Id. Unlike a factual attack, in which the court may weigh and consider evidence outside the pleadings and the plaintiff's allegations are not entitled to the presumption of

truth, a district court reviewing a facial challenge applies the more favorable standard of review under Rule 12(b)(6). Thus, the Court accepts all material allegations as true and construes the alleged facts in favor of the nonmoving party. In re Schering Plough Corp., 678 F.3d 235, 243 (2012) (citing Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir.2000) and Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007)).

### 2. Rule 12(b)(6)

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the

grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

## IV. DISCUSSION

### 1. Sovereign Immunity

First, Defendants contend that the Amended Complaint must be dismissed with prejudice because Plaintiff's claims against the Board and Mr. Hebert[3] are barred by the doctrine of sovereign immunity. For the following reasons, the Court agrees.

---

[3] The Court understands Plaintiff's claims against Mr. Hebert to be against him in his "official capacity" as the Executive Director of the State Board of Nursing at the time of the Board's adjudication of Plaintiff's nursing license in 2011-2013. A suit against a state official in his official capacity is treated as a suit against the state. Hafer v. Melo, 502 U.S. 21, 25 (1991). In contrast, a suit against a state official in his personal capacity, in which a plaintiff seeks to hold the official liable for conduct he himself undertook under color of state law, is treated as a suit against the person of the official, and not his office. Id.
   The Amended Complaint contains no allegations particular to Mr. Hebert and any actions or statements he made during the course of Plaintiff's interactions with the Board. Additionally, Plaintiff sought by a Motion to Substitute Defendants [Docket Item 34] before Magistrate Judge Schneider to replace Mr. Hebert in the case caption with Dorothy S. Carolina, his successor as the Executive Director of the New Jersey State Board of Nursing,

The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. State sovereign immunity is a jurisdictional bar which deprives federal courts of subject matter jurisdiction. Kimel v. Florida Bd. of Regents, 528 U.S. 62, 73 (2000). Under the Eleventh Amendment, an unconsenting state or state official is immune from suit brought in federal court by citizens of that state or citizens of another state. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). It also divests the federal courts of jurisdiction over supplemental state law claims against the state. Raygor v. Regents of Univ. of Minnesota, 534 U.S. 533, 534 (2002).

---

pursuant to N.J. Ct. R. 4:34-4 and F. R. Civ. P. 25(d), both rules of court governing suits against a state official in his official capacity. Accordingly, Plaintiff because appears to assert claims against Mr. Hebert in his official capacity only as the Executive Director of the Board, he enjoys the same status under law as the Board itself.

Even if the Court construes Plaintiff's claims against Mr. Hebert as individual capacity claims, as she sought to do in a second amended complaint denied by Judge Schneider without prejudice [Docket Items 30 & 38] and as she asserts in a letter filed with the Court under seal [Docket Item 39], and sovereign immunity is not applicable to her claims against that defendant, Plaintiff has not stated constitutional or tort claims against him for the reasons discussed in Subparts 2 & 3, below.

State sovereign immunity extends to entities and persons who can show that, even though the State is not the named defendant, "the [S]tate is the real party in interest." Fitchik v. New Jersey Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 1989) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)). The Third Circuit provides an analytical framework for determining whether a state entity, such as the State Board of Nursing, is "an arm of the state" and therefore entitled to Eleventh Amendment immunity: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." Chisolm v. McManimon, 275 F.3d 315, 323 (3d Cir. 2001) (citing Fitchik, 873 F.2d at 659). In this case, all three Fitchik factors balance in favor of finding that the New Jersey State Board of Nursing is an arm of the state.

First, any money judgment awarded against the Board would be paid by the New Jersey state treasury. This is the most important of the Fitchik factors, because when a lawsuit is "in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants from suit even though individual officials are nominal defendants." Ford Motor Co. v. Department of Treasury of Ind., 323 U.S. 459, 464 (1945). Under

13

the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1 et seq., the state is liable for injuries caused by public officials acting within the scope of their employment. N.J.S.A. 59:2-2; 59:10A-1. The state may only refuse to defend and indemnify an employee if the Attorney General determines that the public official acted outside the scope of his employment or acted with "actual fraud, willful misconduct or actual malice." N.J.S.A. 59:10A-2. Neither of those circumstances are present here, where Plaintiff complains of how the Board adjudicated her nursing license. With respect to the Board's status under state law and degree of autonomy, the Court finds that the Board is a "surrogate for the state" and not an "independent agency," Fitchik, 873 F.2d at 662, because the Board's membership is appointed solely by the Governor of New Jersey, N.J.S.A. 45:11-24, and because its powers and responsibilities, including overseeing nursing licensing and education, are prescribed by state statute. See N.J.S.A. 45:11-23 et seq. Accordingly, because the Board is an arm of the State of New Jersey, it enjoys the same sovereign immunity from suit in federal court as the State of New Jersey itself.

Plaintiff's argument that the Board and Mr. Hebert are not entitled to immunity because they committed civil rights violations in adjudicating her nursing license is misdirected. State sovereign immunity is subject to only three exceptions:

14

(1) where Congress abrogates the state's immunity pursuant to a valid exercise of its Fourteenth Amendment power; (2) where a state has validly waived its sovereign immunity and (3) where prospective injunctive relief is sought against state officials to end continuing or ongoing violations of federal law. MCI Telecomm. Corp. v. Bell Atl. Pennsylvania, 271 F.3d 491, 503 (3d Cir. 2001). The Supreme Court has determined that Congress did not abrogate state sovereign immunity when it passed § 1983, the statute by which state officials may be held liable for a deprivation of an individual's constitutional rights. Edelman v. Jordan, 415 U.S. 651, 677 (1974). Plaintiff's reliance on Fitzpatrick v. Bitzer, 427 U.S. 445 (1976), is misplaced because that case dealt with a different statute, the Civil Rights Act of 1964, which the Supreme Court decided is an express abrogation of state sovereign immunity. Id. at 456.[4] Because none of the exceptions to sovereign immunity apply to this case, the Court finds that it lacks jurisdiction to adjudicate Plaintiff's case against the Board and Mr. Hebert. Plaintiff's claims against the Board and Mr. Hebert will be dismissed, and this dismissal shall operate with prejudice.[5]

---

[4] Nor has Plaintiff shown that New Jersey validly waived its sovereign immunity such that it can be sued in federal court for any of Plaintiff's claims, or that she seeks any prospective injunctive, rather than monetary, relief.

[5] A court may deny leave to amend a complaint where it is apparent that "(1) the moving party has demonstrated undue

15

### 2. Plaintiff's Constitutional Claims Against the Board

In the alternative, Defendants assert that the Amended Complaint must be dismissed because it fails to state a claim for deprivation of constitutional rights under 42 U.S.C. § 1983, or the corresponding state law, the New Jersey Civil Rights Act, N.J.S.A. 10:6-2.[6] To state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988) (emphasis added); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011). It is black-letter law that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). Because the Amended Complaint names as Defendants only the Board, an arm of the state, and Mr. Hebert in his

---

delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." United States ex rel. Schumann v. Astrazeneca Pharma. L.P., 769 F.3d 837, 849 (3d Cir. 2014) (citing Lake v. Arnold, 232 F.3d 360, 373 (3d Cir. 2000). In this case, because the Plaintiff's complaint is legally insufficient, and not merely factually insufficient, any amendment would be futile

[6] Courts in this district interpret the NJCRA analogously to § 1983. Coles v. Carlini, 162 F. Supp. 3d 380, 404-05 (D.N.J. 2015) (collecting cases). In particular, both statutes define "person" in the same way. Didiano v. Balicki, 488 Fed. Appx. 634, 638 (3d Cir. 2012). These deficiencies are also not cured by clarifications Plaintiff offers in her recent supplemental letter [Docket Item 39], as discussed elsewhere in this Opinion.

official capacity as Director of the Board, and neither is a "person" amenable to suit under § 1983, Plaintiff's claims for constitutional violations under both the United States and New Jersey constitutions fail.

Even if Plaintiff's claims against Mr. Hebert are construed as individual capacity claims, as she sought to do in a second amended complaint denied by Judge Schneider without prejudice [Docket Items 30 & 38] and as she asserts in a letter filed with the Court under seal [Docket Item 39], Plaintiff has not stated a claim under § 1983 or the NJCRA. It is black-letter law that state actors may be liable under § 1983 only for their own constitutional conduct. Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012). The Amended Complaint contains no allegations particular to Mr. Hebert and any actions or statements he made during the course of Plaintiff's interactions with the Board. Furthermore, to the extent that Plaintiff asserts that her due process rights were violated because the Board and its Director failed to follow the law or reached erroneous conclusions, New Jersey law has provided the process of appeal and review in the Superior Court of New Jersey, of which Ms. Ryan has already availed herself, in which claims of denial of administrative due process may be raised and remedied. Due process simply does not require a second avenue of judicial review, in federal court, of a state administrative board decision, where the state has

already provided for state court review in which all procedural and substantive objections can be raised by the aggrieved party.

### 3. Plaintiff's Tort Claims Against the Board

Defendants also take the position that Plaintiff's non-constitutional tort claims against the Board and Mr. Hebert, including for defamation, malicious prosecution, intentional infliction of emotional distress, and invasion of privacy, must be dismissed because Plaintiff failed to file the necessary notice of claim before instituting this suit in federal court.

The NJTCA requires that a prospective plaintiff seeking money damages from a public entity (such as the Board) must first file a notice of claim with the public entity within 90 days of the incident giving rise to her claim. N.J.S.A. 59:8-8. That 90-day period for filing a notice of claim can be extended up to one year at the discretion of a judge of the Superior Court of New Jersey, if a plaintiff can show "extraordinary circumstances" for her delay. N.J.S.A. 59:8-9. Once two years have elapsed since the incident giving rise to her claim and no notice has been received, the plaintiff "shall be forever barred from recovering against a public entity or public employee." N.J.S.A. 59:8-8. Failure to comply with the notice of claim procedures set forth sections 59:8-3 through 59:8-11 will bar a plaintiff from receiving damages from a public entity,

regardless of her putative entitlement to damages under other provisions of the NJTCA. N.J.S.A. 59:8-3.

Plaintiff has failed to comply with the notice of claim procedures required by N.J.S.A. 59:8-3, and this requires dismissal of her tort claims against the Board and Mr. Hebert. As of July 6, 2016 the State of New Jersey had no record of a notice of claim filed by Plaintiff against the Board or Mr. Hebert. See Certification of Stephanie Hargrove [Docket Item 27-4]. Plaintiff's assertion in her Opposition Brief that she filed a notice of claim with the State by certified mail on August 4, 2016 is not enough to cure this deficiency; there is no indication that she sought permission from a Superior Court judge to file her late notice, N.J.S.A. 58:8-9, and in any event, her notice was filed more than two years after the last incident giving rise to her claim against the Board, the issuance of its Final Order of Discipline on February 15, 2013. N.J.S.A. 59:8-8. Accordingly, Plaintiff's tort claims in the Amended Complaint must be dismissed.

## V. CONCLUSION

An accompanying Order will be entered.

**January 9, 2017**            **s/ Jerome B. Simandle**
Date                            JEROME B. SIMANDLE
                                Chief U.S. District Judge